Good morning, Your Honor. May it please the Court, Stephen Rosales on behalf of Plaintiff Appellant Doria King. The error of the ALJ and the Administrative Law Judge in this Social Security case revolves around the treatment and consideration of the mental health records in this matter. The materiality of that error is found in the vocational evidence in this matter. Ms. King has suffered from mental impairments for several years. Unfortunately, like a lot of individuals who suffer from mental impairments, the treatment notes and records of that impairment are sparse, to say the least. Recognizing that, at some point in the development of this case, the Social Security Administration requested that she attend an examination by Dr. Hirakawa, which appears in the record. Dr. Hirakawa diagnosed depression as well as an anxiety disorder and found in several areas of mental functioning mild limitations and several others what he described as mild to moderate. The record is silent as to whether or not Dr. Hirakawa was saying that, on a temporal basis, sometimes she would be mild and other times she would be moderate, or if he was suggesting that there was a fixed point between mild and moderate that Ms. King was at. The Social Security Administration then had the file reviewed by what's considered to be a non-examining physician. It's an employee of the state agency, a medical doctor, who were reviewing this record, including Dr. Hirakawa's opinion. Consistent with that opinion, found several limitations and described them as moderate with respect to maintaining concentration and, more specifically, with dealing with social functioning, not getting along with the public. Is this which — who's that expert? That's the opinion that appears in the record between 582 and — And Dr. Lucilla? Yes. I didn't know how to say his name, so that's why I asked you who that expert is. But you didn't argue anything about the opinion of the non-examining physician at the district court level, did you? I didn't specifically raise as a separate issue the treatment of the state agency opinion. So it doesn't seem to me that raising it here makes much difference, because it's waived. Well, I'm not raising the state agency failure to properly consider the state agency in and of itself as a separate issue. The issue, as always, will be the priority under the Lester analysis is — Well, but I understand that your argument is that the opinion of the non-examining physician clarified the vagueness of the report, and I didn't find that any place in front of the district court. Correct, Your Honor. So then if it isn't in front of the district court, it doesn't seem to me that you can make it here. The issue is whether or not Dr. Hirakawa's opinion is consistent with this record. Well, I understand what the issue is, and we're really talking about Dr. Hirakawa's opinion. Correct. And it's my understanding that the ALJ did not reject Dr. Hirakawa's opinion in total. Correct. That he only rejected part of it. Correct. And so, therefore, I understand that my standard review is substantial evidence. Because he did not reject the total opinion but accepted some of it, I don't know where you find the case that says he even has to have clear and convincing reasons for not taking some of it. I was trying to find that, and I can't find that case. Even if he does need clear and convincing reasons, is there such a case? The case that I would cite would be the Reddick v. Chater case, Your Honor. That's the best case you have? The ALJ can't parse the record to suit his needs. Well, I understand that, but the ALJ can take, per Dr. Hirakawa's opinion, some of it and not take the rest of it. And I don't find a case that suggests that if he doesn't take some and takes other parts, he has to have clear and convincing reasons why he doesn't take the other part. Because under the Orn analysis — oh, I'm sorry. I apologize. Vincent v. Heckler indicates that an ALJ always has to give specific legitimate reasons to pertinent and probative and — To reject a treating physician's opinion. It was not rejected here. Correct, Your Honor. But the analysis is consistent with the examining physician analysis. Well, in the examining physician's analysis is waived. No. Well, you didn't make it in the district court. The examining physician analysis is not waived, Your Honor. Dr. Lucillus? He's a non-examiner. Oh, the non-examiner.  Right. And again, I understand Your Honor's question, but from my point of view, this record is before this Court. The fact that I may not have more specifically argued a point doesn't mean that I can't rely on a bit of evidence in this record as long as it's part and parcel of the same issue. I understand your argument. I just don't find a case that supports it. And besides that, supposing I suggest that he needs clear and convincing reasons, why are not Hayakawa's statements that King was moderately, mildly to moderately limited in various functions because it's too vague, and additionally, there are no treating basis for moderate limitations since King had no mental health treatment, why are they not clear and convincing reasons? Well, taking the last one first, if examining physicians who conduct their own examination have clinical independent findings to rest an opinion on aren't at all worthwhile without some other treatment records, then this case should have been resolved at step two with respect to the mental health. Because what the ALJ is saying is unless you have some treatment records, even if we send you out to examination, it doesn't matter because you have no treatment records. It's nonsensical. No, I think it's a comment more on Petitioner's own perception of her condition. If she's told by her regular physician, go get help, and she doesn't, there's at least a fair question as to how much help she needs. I would say that a fair reading of the Winn case, Your Honor, indicates that with respect to mental impairments, the failure to seek treatment even when recommended isn't as a strict test as it would be with a nonmental condition. I don't quarrel with that. But it's a factor that may fairly be considered. And the ALJ in this case appeared to consider it. That's correct. But that goes to the credibility of the individual. The ALJ here. Not necessarily credibility, but also the severity. I mean, mental illnesses are difficult to deal with. Correct. But if the applicant's own perception of condition is such that the applicant doesn't seek treatment, even in the face of pretty clear advice to do so, then there's some question, is that a failure because the applicant can't understand what's going on in the world or because the applicant's condition really isn't quite so severe? And that's why they sent her out to a doctor to examine because they weren't sure about  Well, who sent her out for the examination? I mean, it wasn't her. So I suggest her own perception of her condition, the fact that she's sent by Social Security to go to an examining physician. If I break my leg and I swear to the doctor it's not broken, it doesn't mean the doctor's wrong, Your Honor. No, but if I've done all sorts of things that may be, I mean, the examining physician comes in with his description. And part of the problem here is the description's ambiguous. I'm not quite sure what to make of it. And as you indicated, that's part of the difficulty we have with this record. But I think there's also something to be said, and again, it's unique because of mental illness, perhaps. You can't get an X-ray that demonstrates that the leg is broken. And so what do we have here really to demonstrate her disability? If her own behavior doesn't suggest the disability, that's a factor to weigh. Or a factor the ALJ fairly could weigh. And I think those types, again, the ALJ noted with respect to the credibility analysis that when she appeared before Dr. Hirokawa for her examination, she told him she was looking for work. And there are cases that state that the assertion that one has the desire to work That shouldn't be a bad thing. Exactly. So Dr. Hirokawa's opinion might even be more weighty because she didn't manifest a, oh, I'm helpless, please, or I'm completely suicidal. The ALJ even noted that with Dr. Hirokawa in the credibility analysis, she told him I want to work or I'm looking for work and I'm not suicidal. She represented Dr. Hirokawa that she probably is better than maybe she really is. And Dr. Hirokawa, using his expert medical opinion, teased out exactly what her The fact that she, we have, the ALJ found a severe impairment. The fact that she wants to deny it doesn't mean that she doesn't have one. The ALJ rejected the State agency opinion, Your Honor. I'll abandon it. If you feel it's waived, I'll waive it. But we can't get from there to here without legal material error, because once we exclude the State agency, all we have left is an examining opinion of Dr. Hirokawa, who's a specialist. While we do have some treatment notes from a physical internal medicine specialist who pushed some pills on her at her request and kept on deferring and referring her, the Lester opinion and others, the progeny of that, indicate that one of the reasons we don't give weight to a treating physician is when they're not a specialist. It doesn't mean that a treating physician can't offer an opinion in an area that they're not a specialist. But when confronted by an examining opinion based on its own clinical observations, that's not enough in a lot of other cases to uphold the treating physician opinion. Dr. Young here felt she needed to see somebody else beyond his expertise. She never did. But we can't ignore what Dr. Hirokawa found. And the ALJ ---- Thank you, counsel. Your time's up. We'll give you a minute or two for rebuttal. I appreciate your honor. Thank you. May it please the Court. Timothy Boland for the Commissioner. The ALJ properly rejected the mild to moderate mental limitations assessed by Dr. Hirokawa in this case, but accepted much of the rest of the treatment. What's wrong with mild to moderate? Well, it's a range. The district court found that it implied that claimant's limitation fell somewhere between mild to moderate. But the doctor did not specify where within that range. But what's wrong with that? I mean, why discount that entirely as vague? Well, because it was inconsistent with Dr. Hirokawa's other findings. On examination, the findings were relatively benign. The diagnoses were also benign. He diagnosed a global assessment of functioning score of 62, which indicates only mild symptoms, mild difficulties in psychological functioning, generally functioning pretty well. That's a quote from the diagnostic manual. Is that what he said, that it was inconsistent with the other testimony of the doctor? I thought he said it was just too vague to understand. Right, but he also cited the part of Dr. Hirokawa's report that he accepted, which included that GAF score and also included Dr. Hirokawa's notations of mild symptoms of depression. Well, I could understand if he said the problem was that the testimony was inconsistent with his other testimony, and he's going to disregard it for that reason. I didn't see that in the report. All I saw was he said it was vague. Right, but he did discuss the report in detail. Discussing the report is one thing, but then you give your reason. And your reason is that it's vague. And if it's vague, then he has a duty to clear it up, doesn't he? Not exactly, Your Honor. If it were ambiguous, would he have a duty to clear it up? Or inadequate. Yeah. The regulation is — Ambiguous is you have a duty, but vague you don't? Well, there's a specific regulatory definition of inadequacy. Now, I asked about ambiguous, not inadequate. Are you asking whether vague is synonymous with ambiguous? No. I'm asking whether you had a duty to clear it up if it were ambiguous, and I think you said yes. I didn't say yes. You didn't. Okay. Are you familiar with the tone-up pension or whatever it is? Yes. And doesn't that say if it's ambiguous, you have a duty to clear it up? But that case was addressing 20 CFR section — actually, I don't remember if it was 4041519P or 416919P, but that's the case law extension of this regulation, which says that a consultative examination report must be an adequate report of examination as compared to standards set out in the course of a medical education. In other words, it speaks to the completeness of the report. The ALJ did not find this report to be in any way incomplete. Dr. Hirakawa went through every process of the consultative examination, made all the diagnoses, and set forth the functional assessment. There was nothing missing. It's just that those aspects of the functional assessment were vague. Well, what was missing is that you didn't explain to your satisfaction what mild to vague was. And you apparently felt that you have to say it's either mild or it's moderate, and there's no such thing as anything in between. Yes. Well, if he used terms that somehow were unsatisfactory because they were vague, it seems to me that his duty is to try to clear that kind of thing up. Dr. Hirakawa gave an assessment, and that's what was required, that the assessment  Well, I'm not talking about the doctor. I'm talking about the ALJ. His duty is not to be in there looking for ways to deny things. His duty is to try to clear up vague statements or ambiguous statements. And he said that this was a vague statement. But he also said it was unsupported by the record evidence, by the treatment records, and by setting forth the opinion as part of the opinion, Dr. Hirakawa's opinion, that he accepted, he illustrated that those mild to moderate limitations, anything above mild, was inconsistent with what Dr. Hirakawa had found on examination and diagnosed. That's why I said if he had said the reason he was rejecting it was it was inconsistent, I might have different questions. But as I said to you, I didn't find anything in his statement that said I reject it because it's inconsistent. The Commissioner's position is that by setting forth the findings and the diagnoses and then noting those mild to moderate limitations as being vague and not helpful, we can infer that the ALJ was also rejecting it because it were inconsistent with the other. The Court doesn't say it, but because we're such great experts, we can figure out what he had in his mind. The Court is welcome to infer from the record what the ALJ had in his mind and does it all the time. Well, I think he had in his mind what he said, that he thought it was too vague to understand. And not helpful in assessing a residual functional capacity. If it's vague, it's not going to be very helpful, is it? Well, the next sentence is, there is no treating basis for moderate limitations since the claimant has had no mental health treatment. Now, separate apart from the merits of that statement, I infer from that a statement that moderate limitations are inconsistent with the history. That's correct, and also inconsistent with Dr. Hirakawa's findings on examination and diagnoses. Basically, the record is devoid of any objective evidence that supports moderate limitations. And it was my understanding in reading Tonopetian, and I'm not sure I say that right, that really what the case says is the record is inadequate because of what happened underneath, right? Correct. So it really isn't about vagueness or ambiguity, but inadequacy. Right. Inadequacy speaks to completeness, the completeness of the report. Well, I read it somewhat differently, of course, because it says ambiguous evidence or the finding that the record is inadequate. To me, the or means something. And ambiguous evidence is something that triggers the ALJ's duty, according, as I read that sentence. Well, even if we had followed, if the ALJ had followed up and Dr. Hirakawa had said no, I definitely meant towards the moderately impaired side of the spectrum in those functional areas. Claimant still doesn't have a case because this Court has ruled that moderate limitations are perfectly well captured in a residual functional capacity, limiting a claimant to simple repetitive tasks in a non-public setting, which is what the ALJ did here. So even if we accepted that Dr. Hirakawa intended moderate limitations rather than mild to moderate, and we accepted Dr. Lucila's assessment of moderate limitations, none of that precludes a residual functional capacity for simple repetitive tasks in a non-public setting. The case on point there is Stubbs-Danielson, which is cited in the Commissioner's brief. So claimant fails to establish disability even if we take, even if we credit Dr. Hirakawa's report as being moderate and credit also the reviewing physician's assessments of moderate limitations. Well, I would think that that would be the business of the agency to say, I know lawyers afterwards can make very good arguments about what an agency should have said, but what we view is what the agency did say. Whether that's a good idea or not is another question, but we can't substitute the arguments of counsel later for what the agency actually said. And I find your arguments. The case could be remanded for benefits unless the claimant is in fact disabled, and this claimant is not under any reading of the record. I didn't say we had to remand it for benefits. I said it could be remanded for the agency to say what you think the agency should have said. How does the moderate, well, a fun thing, you cited a case which I meant to jot down and didn't with regard to the effect on the RFC. Stubbs-Danielson. Okay. How is, I mean, is that defined in the regulations with regard to what moderate limitations, what impact the moderate limitations have? In the form that Dr. Lucila filled out, moderate, the reviewing physician is instructed to check moderately limited if the ability to function within that area is impaired. That's the regular, well, that's the definition according to the program operation manual system, which is what reviewing physicians abide by when they complete those forms. And I look at the RFC, and it doesn't speak in terms of mild or moderate. It translates into a workplace impact. And as I look at the impact, it says she's able to perform simple repetitive tasks with no public contact as a job. Right. A task. What moves from mild or moderate to that particular description in the RFC? What does the ALJ look to to decide what the impact on the RFC is supposed to be? Well, the ALJ looks at all the limitations assessed by the physicians and then translates that into a workplace functionality report, which is, I see I have no time, but 20 seconds. The ALJ's job is to look at all the conflicting medical opinions. 20 seconds the other way, but you can still talk. Okay. The ALJ's job is to look at all the conflicting medical opinions, resolve those conflicts. And even if we credit the opinions at issue here, claimant is not disabled. The ALJ didn't ask the expert the question of jobs in the workplace based on Dr. Harakawa's testimony. He did it assuming that that was incorrect. And then the expert could say, vocational expert, could say, give his opinion about the jobs available. Well, to the extent that the RFC assessed and the RFC posed in the hypothetical question to the vocational expert encompassed those limitations, he was positing the limitations assessed by Dr. Harakawa. And the RFC, residual functional capacity, posited was simple repetitive tasks in a non-public setting. And the Commissioner's position is that all those limitations were encompassed in that residual functional capacity assessment. Thank you. Thank you, Your Honor. The key point is that the only way the Court affirms the ALJ's decision if it does its job, the ALJ's job for him. The Stubbs-Danielson case can't be applicable because of Stubbs-Danielson, you had an examining physician who imposed limitations without a comment with respect to simple work and a non-examining who imposed moderate limitations with an SRT limitation. And that's what the ALJ relied on. In this case, the ALJ rejected the non-examining State agency opinion. The only way Stubbs-Danielson applies is if you bring the State agency back in over the ALJ's rejection of it to apply Stubbs-Danielson. Stubbs-Danielson also doesn't apply because Stubbs-Danielson, during the hearing, the vocational expert said anything more than mild impairment precludes work activity, just like this vocational expert. But according to Stubbs-Danielson, the reason the ALJ could ignore that is because in the decision of the ALJ and Stubbs-Danielson, he addressed the vocational testimony and rejected it as part of his credibility analysis. And the Court upheld the rejection of the vocational testimony based on the ALJ's findings with respect to respecting his credibility. The ALJ was silent here as to why the vocational expert addressing the moderate limitations or the mild to moderate, because the administrative counsel for Ms. King asked three hypotheticals that incorporated both the rejected State agency limitations and all of Judge Dr. Hirakawa's. And, Judge Reinhart, the analysis is correct with respect to incomplete or inadequate. The regulations that I've cited in my brief on page 20 indicate, and there are several regulations, that we get, the administration gets examiners to resolve conflicts, to resolve ambiguity, vagueness. Sorry. They don't get examiners to create more problems. It's strange that the ALJ clearly read Dr. Hirakawa's opinion for those points that satisfied a nondisability finding, but was confused regarding vagueness. What difference is the term mild to moderate versus the term mild? Where in the regulation does the administration or in a ruling or even in the PONS manual specifically tell us what mild means with respect to Dr. Hirakawa's opinion, let alone mild to moderate? If mild to moderate was vague, why wasn't mild vague? And if mild is not vague, under the regulations, a mild impairment is nonsevere. Why was the depression found to be severe? The treater found mild depression. The ALJ could have easily said mild depression from the treater, mild findings other than the vague ones from Dr. Hirakawa, it's a nonsevere impairment. ALJ didn't do that. ALJ found severe impairment. Got me past step two. Kennedy. Somehow getting past step two isn't a guarantee of victory later on, so don't put too much weight on that. My point is, is the cry of mild to moderate confuses me, but I know assuredly what mild means by ALJ. It just stinks. It really does. Because what does mild mean? In the context of Social Security Administration, no one can tell you, Your Honor, look for any case. No definition is out there. The commissioner continuously refuses to define the term mild, moderate. When you ask someone if they have a limitation to light work, you know what that means, because the commissioner tells us light work is no more than 20 pounds occasionally, 10 pounds frequently, lifting and carrying. All right? The commissioner has told us what light means. We don't just vaguely understand light or light to medium or sedentary to light. But with respect to mental functioning, we're allowed to mild, moderate, severe, mild to moderate, and then the commissioner doesn't give us the answer. I understand your problem. I don't know that there's a solution. I mean, do you lift 20 thoughts slightly? I mean, the difficulty with mental capacity, mental disturbances, is that they're a little harder to put your hands on. And so I share your concern. I don't know that it gives as much of an answer here. Well, I think, Your Honor, hit on it earlier when you noted that the form that the State Agency non-examiner, Dr. Lucero, Lucinda, filled out says give us your opinions on a day-to-day work basis. And while a medical professional can tell us what's wrong with someone, how those And in this case, those limitations prevent someone from working. And again, thank you, Your Honor. Thank you, counsel. The case here, Your Honor, will be submitted.
judges: Reinhardt, Clifton, Smith